No. 3086

Second Circuit

---

## HAMILTON v. RIGBY

---

(March 14, 1928. Opinion and Decree.)
(April 26, 1928. Rehearing Refused.)
(July 6, 1928. Writ of Certiorari and
Review Refused by Supreme Court.)

---

Dimick and Hamilton, of Shreveport, attorneys for plaintiff, appellant.

R. D. Fuller and Crow & Coleman, of Shreveport, attorneys for defendant, appellee.

ODOM, J. Plaintiff is the holder and owner of three promissory notes, each for the sum of $55, dated October 1, 1925, and due, respectively ten, eleven and twelve months after date, made payable to Mrs. Grover Weaver, signed by J. H. Elliot, and endorsed by the defendant, O. C. Rigby.

He brings this suit against said O. C. Rigby to recover the amount of said notes, together with 8 per cent interest from their maturity until paid and 10 per cent attorney's fees.

The defendant, in answer, admitted that he signed the notes sued on as endorser, but set up the defense that he endorsed the notes with the understanding that he was to be released from said endorsement under certain conditions, which will be detailed in this opinion.

Plaintiff's demands were rejected by the lower court and he has appealed.

### OPINION

In the month of December, 1925, the plaintiff purchased from Mrs. Grover Weaver an apartment house in the city of Shreveport. On or about October 1st, previous to the sale, Mrs. Weaver leased one of the apartments in the house to J. H. Elliott for a period of twelve months at $55 per month and took his notes for the monthly rentals covering the entire period. As was her custom, she placed all twelve of the notes in a bank in Shreveport for collection. Elliott, it seems, paid three of the notes to the bank for Mrs. Weaver's account, and when she sold the property to the plaintiff, Hamilton, she turned over to him the other nine notes.

About the last of January or the first of February, 1926, Elliott, the lessee of

the apartment and the maker of the notes sued on, desired to move out, and went to Hamilton, who then owned the house, to get released from his contract. Hamilton informed him that he would release him only on condition that he would get some responsible person to endorse the rent notes and thereby become bound for the monthly rentals. Elliott suggested O. C. Rigby, the defendant, as an endorser. Hamilton made some investigation as to Rigby's financial standing and agreed to accept him, whereupon Rigby endorsed the notes. All the notes except three were paid. Hamilton now seeks to hold Rigby as endorser on the notes. Hence this suit.

The only dispute between Hamilton and Rigby is this: Rigby contends that Hamilton agreed at the time the notes were endorsed by him that in case the apartment leased by Elliott could be sub-let to a tenant satisfactory to Hamilton, he, Rigby, would be released from his obligation as endorser on the notes, and he says that the apartment was sub-let to a tenant who was approved by Hamilton, and he, Rigby, pleads release.

Hamilton, on the other hand, while admitting that said apartment was sub-let to a tenant satisfactory to him, denied that he agreed to release Rigby. Hamilton admits that he did approve the sub-tenant, but he says it was understood between him, on the one side, and Elliott and Rigby on the other, that Elliott should not sub-let the apartment to any one not approved by him, but that his approval related to the desirability of the new tenant as an agreeable and acceptable neighbor to other tenants in the house and had no reference to financial responsibility or a release of Rigby.

The testimony shows beyond question that it was never intended that Rigby should be released from his endorsement on the notes and that he was not in fact released. Hamilton swore that he did not agree to release and did not release Rigby. Rigby, in portions of his testimony, swore that Hamilton did agree to release him if a satisfactory sub-tenant could be secured. But his testimony, as a whole, is rather conflicting on this point. He was asked to state the conditions under which he endorsed the notes, and he said he asked Hamilton the direct question as to the release, and that Hamilton said, "We can arrange that," whereupon, he said, they went to Hamilton's office and that Hamliton wrote Elliott a letter "giving Mr. Elliott authority to sublet his house." The letter which Hamilton wrote to Elliott is in the record, and reads as follows:

"We do hereby give our consent to your subletting the apartment now occupied by you at 620 Prospect avenue, same being apartment No. 4. It is understood that we reserve the right to approve any tenant to whom you wish to make the sub-lease."

There is nothing in the letter that suggests that Hamilton was willing to release Rigby. It is in keeping with Hamilton's testimony that he was willing and agreed that the apartment might be sub-let to a satisfactory tenant.

Rigby says he approached Hamilton on one occasion and asked about the release and Hamilton (who was examining Rigby in court) asked:

"What did I say?"
and Rigby answered:

"You said I, I, I will see about it, about all I ever got out of you."

The apartment was sub-let to a man named Sandlin, who kept it until June, and paid his rent. Rigby testified:

"Sandlin paid me, and I paid the bank, and the bank paid you (Hamilton) I think."

Rigby was asked:

"Then the rent notes were paid by you to the bank?"

And he answered:

"They were."

"Q. And delivered by the bank to you?
"A. They were."

This continued down to June, about five months after Rigby says he was released. The fact that Rigby accepted rent from Sandlin and paid the notes at the bank and that they were delivered to him, shows conclusively, we think, that he recognized his obligation to see that the notes were paid. Sandlin moved out in June, and the three notes sued on were left in the bank unpaid. When plaintiff called on Rigby to pay these notes he repudiated his obligation and refused to pay, on the ground that he had been released.

In addition to this, a man named Fishell at one time wanted to lease the apartment. He said he learned that Rigby had it in charge after Elliott left. He went to Rigby and leased it from him and paid Rigby one month's rent in advance.

S. B. Simon, a realtor, testified that he wanted the apartment for a client and went to Hamilton. Hamilton told him that the apartment was leased and that Rigby had charge of it. He saw Rigby and leased it from him and went back to Hamilton and got his approval of the tenant, Sandlin.

Another realtor testified that he went to Hamilton about the apartment and was referred to Rigby.

The Judge of the lower court mainfestly erred in holding that Rigby was released from his obligation as endorser.

Another defense made by defendant is:

"That the plaintiff and appellant had released a prior endorser, namely, Mrs. Grover Weaver, and that he was therefore discharged from any liability on the notes."

This defense is not good. The notes were made payable to Mrs. Weaver as lessor. When she sold the property to Hamilton she delivered the rent notes to him and as they were payable to her she endorsed them solely for the purpose of transferring and delivering them.

Counsel argue that she was a surety on the notes and that plaintiff did release her. There is no evidence that plaintiff did release her. But suppose it be conceded that she was a surety and was released, that did not release defendant. A release granted to one of the sureties does not release the other.

Civil Code, art. 2205.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, W. B. Hamilton, and against O. C. Rigby, defendant, for the full sum of $165 together with 8 per cent per annum interest on $55 of said amount from August 1, 1926, until paid, and on $55 of said amount from September 1, 1926, until paid, and on $55 of said amount from October 1, 1926, until paid, together with 10 per cent attorney's fees, and all costs.